# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| APPLIED PROFESSIONAL TRAINING, INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>MIRA COSTA COLLEGE, entity unknown, et al.,<br><br>Defendants. | CASE NO. 10cv1372 DMS (POR)<br><br>**ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**[1]<br><br>**[Docket No. 7]** |

This case came on for hearing on Defendants' motion for summary judgment on September 24, 2010. John Alessio appeared on behalf of Plaintiff, John Fuchs appeared on behalf of the moving Defendants, and Amelia Yurch appeared on behalf of Defendant MiraCosta College. After reviewing the parties' briefs and hearing oral argument from counsel, the Court denies the motion.

**I.**

**BACKGROUND**

Plaintiff Applied Professional Training, Inc. ("APT") is engaged in education and technical training for the communications and electric power industries. (Compl. at 2.) Defendants Cawley, Uribe, Glenn and Aydelott are former employees of APT, and Defendant Price was formerly an

---

[1] Defendants framed their motion as one for dismissal for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1), but the Court thereafter construed the motion as one for summary judgment under Rule 56.

independent contractor for APT. Cawley was employed as an Instructor and Course Developer and Price was Development Director for Plaintiff's Solar, Wind and Renewable Energy Department. Cawley, Uribe and Price all left APT in April 2009. Glenn, who was employed as a sales representative, left APT on December 28, 2009. Aydelott, who was employed as a sales and marketing representative, left APT on April 2, 2010.

After terminating their relationships with APT, each of the individual Defendants began working at Defendant Teleskills. Teleskills offers educational courses in the telecommunications industry, and is a direct competitor of APT. Teleskills was the brainchild of Cawley and Uribe, who decided to start Teleskills while they were still employed at APT. (Decl. of Thomas Cawley in Supp. of Mot. ("Cawley Decl.") ¶ 8.) Although these Defendants formed the idea of starting Teleskills while employed at APT, Cawley states Teleskills did not do any business until after he and Uribe left APT in April 2009. (*Id.*)

After leaving APT in April 2009, a dispute arose between APT and Price. Price alleged that APT owed him certain commissions pursuant to their agreement, and APT alleged that Price was violating his obligations to protect APT's trade secrets and proprietary information. (Decl. of John R. Fuchs in Supp. of Mot. ("Fuchs Decl."), Ex. 1.) APT also alleged that Price was making false and misleading statements about APT. (*Id.*)

At the same time, APT's President Steve Blume was in contact with Teleskills's new client, MiraCosta College, which was preparing to offer a new green energy class with the help of Teleskills. Blume informed MiraCosta that the instructor for the course was a former employee of APT, and that the materials for the course were in violation of APT's copyrights. (*Id.*) He also stated that Cawley, Uribe and Price were in violation of a non-compete clause in their respective agreements with APT. (*Id.*) These accusations quickly became part of the dispute between Price and APT. (Fuchs Decl., Ex. 2.)

Over the next month, the parties attempted to resolve the dispute informally. (Fuchs Decl., Ex. 3.) However, Price refused to sign a Settlement and General Release Agreement drafted by Blume. (*Id.*) Price claimed the Agreement was "one-sided[,]" and insisted that Uribe, Cawley and Teleskills

1 ///

2 be included in any such Agreement. (*Id.*) Thereafter, Blume terminated the services of his counsel,
3 and began dealing directly with Defendants' current counsel, Mr. Fuchs. (Fuchs Decl., Ex. 4.)

4      Shortly thereafter, Blume, Cawley, Uribe and Price executed a Settlement Agreement and
5 Mutual Reciprocal Release ("Release"). Mr. Fuchs drafted the Release, which provides for APT to
6 pay Price $10,000, "less amounts previously paid but plus the sum of $3,000, representing Price's
7 legal fees incurred in this dispute, as payment in full for the settlement of the dispute." (Fuchs Decl.,
8 Ex. 5.) The Release was executed on June 11, 2009.

9      On June 29, 2010, APT filed the present case against Defendants. APT alleges claims for (1)
10 copyright infringement against MiraCosta, Teleskills, Price, Cawley and Uribe, (2) trade secret
11 misappropriation and (3) conversion against Teleskills, Price, Cawley, Uribe, Glenn and Aydelott, (4)
12 breach of contract and (5) breach of confidence/loyalty against Defendants Glenn and Aydelott and
13 (6) unfair competition and (7) conspiracy against all Defendants. In response to the Complaint,
14 Defendants Teleskills, Price, Cawley, Uribe, Glenn and Aydelott filed the present motion. Defendant
15 MiraCosta College has also filed a motion to dismiss, which is scheduled for hearing on November
16 19, 2010.

17 **II.**
18 **DISCUSSION**

19      Defendants argue the Release operates as a bar to all of Plaintiff's claims, and they are
20 therefore entitled to summary judgment. Plaintiff asserts there are genuine issues of material fact that
21 require denial of the motion.

22 **A.    Standard of Review**

23      Summary judgment is appropriate if there is no genuine issue as to any material fact, and the
24 moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party has
25 the initial burden of demonstrating that summary judgment is proper. *Adickes v. S.H. Kress & Co.*,
26 398 U.S. 144, 157 (1970). The moving party must identify the pleadings, depositions, affidavits, or
27 other evidence that it "believes demonstrates the absence of a genuine issue of material fact." *Celotex*
28 *Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "A material issue of fact is one that affects the outcome

1  ///

2  of the litigation and requires a trial to resolve the parties' differing versions of the truth." *S.E.C. v.*
3  *Seaboard Corp.*, 677 F.2d 1301, 1306 (9th Cir. 1982).

4  The burden then shifts to the opposing party to show that summary judgment is not
5  appropriate. *Celotex*, 477 U.S. at 324. The opposing party's evidence is to be believed, and all
6  justifiable inferences are to be drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255
7  (1986). However, to avoid summary judgment, the opposing party cannot rest solely on conclusory
8  allegations. *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986). Instead, it must designate specific
9  facts showing there is a genuine issue for trial. *Id.* More than a "metaphysical doubt" is required to
10 establish a genuine issue of material fact." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
11 475 U.S. 574, 586 (1986).

12 **B.    The Release**

13 The Release at issue in this case appears to be governed by California law.[2] Under California
14 law, "[t]he interpretation of a release is governed by the same principles applicable to any other
15 contract." *Reudy v. Clear Channel Outdoors, Inc.*, 693 F.Supp.2d 1091, 1113 (N.D. Cal. 2010) (citing
16 *General Motors Corp. v. Superior Court*, 12 Cal. App. 4th 435, 443 (1993)). The guiding principle
17 is that "'[a] contract must be so interpreted as to give effect to the mutual intention of the parties as
18 it existed at the time of contracting, so far as the same is ascertainable and lawful.'" *Yount v. Acuff*
19 *Rose-Opryland*, 103 F.3d 830, 836 (9th Cir. 1996) (quoting Cal. Civ. Code § 1636). *See also In re*
20 *Bennett*, 298 F.3d 1059, 1064 (9th Cir. 2002) (quoting *Bank of the West v. Superior Court*, 2 Cal. 4th
21 1254, 1264 (1992)) (stating fundamental goal of contract interpretation is to give effect to mutual
22 intention of parties); *United States Cellular Investment Co. of Los Angeles, Inc. v. GTE Mobilnet, Inc.*,
23 281 F.3d 929, 934 (9th Cir. 2002) (citations omitted) (same). The starting point for determining the
24 parties' intent is the language of the contract. If the "'contractual language is clear and explicit, it
25 governs.'" *Bennett*, 298 F.3d at 1064 (quoting *Bank of the West*, 2 Cal. 4th at 1264). *See also*

---

28  [2] There is no "governing law" clause in the Release, but it does refer to California Civil Code § 1542, and the parties rely primarily on California law in their briefs.

*Centigram Argentina, S.A. v. Centigram Inc.*, 60 F.Supp.2d 1003, 1007 (N.D. Cal. 1999) (quoting Cal. Civ. Code § 1638) (same).

The language at issue here is as follows:

> B.  <u>Mutual Release and Discharge:</u>  The Parties agree to completely, fully and finally release and forever discharge one another, and their agents, employees, representatives and attorneys, from and against any and all claims, demands, liability, damages, causes of actions, costs, expenses and compensation of every kind and nature whatsoever, past, present, or future, known or unknown, arising from or in any manner related to the dispute.
>
> C.  <u>Waiver of Civil Code Section 1542:</u> It is understood and agreed that this release extends to all claims of every kind, nature and description whatsoever, known or unknown suspected or unsuspected, and any and all rights under the provisions of Section 1542 if [sic] the Civil Code of California or under any comparable statute of any other jurisdiction. The Parties expressly acknowledge that they each have been represented by counsel in connection with this settlement, and that they are familiar with and expressly waive and relinquish every right or benefit that they have or may have under the provisions of Civil Code section 1542, which reads as follows:
>
>> "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor."

(Fuchs Decl., Ex. 5.)

In interpreting this contractual language, the first question for the Court is whether the language "is susceptible to the meaning given it by the parties." *Bennett*, 298 F.3d at 1064. In addressing this question, "the court is required to engage in preliminary consideration of extrinsic evidence to see whether it creates an ambiguity." *Barris Industries, Inc. v. Worldvision Enterprises, Inc.*, 875 F.2d 1446, 1450 (9th Cir. 1989). An ambiguity exists if the contract term is "susceptible to more than one reasonable interpretation[.]" *Thor Seafood Corp. v. Supply Management Services*, 352 F.Supp.2d 1128, 1131 (C.D. Cal. 2005) (citing *Badie v. Bank of Am.*, 67 Cal. App. 4th 779, 798 (1998)).

APT argues the language set out above was intended to cover only the employment-related disputes between itself and Price, Cawley and Uribe. In support of this argument, APT relies on the language of the Release. Specifically, APT relies on the recital that states the parties "are involved in a disputes [sic] arising out of the employment of Cawley and Uribe by APT and an independent contractor agreement between Price and APT." (Fuchs Decl., Ex. 5.) APT notes the Release fails to mention trade secrets or copyrights. APT also points out that it was the only party to pay

compensation under the Release "for the settlement of the dispute." (*Id.*) Neither Price, Cawley nor Uribe paid anything to APT as settlement for any claims of copyright infringement because they had

/ / /

assured APT that they "[were] not and would not use any APT materials and other proprietary information." (Decl. of Steve Blume in Supp. of Opp'n to Mot. ("Blume Decl.") ¶ 3.)

In contrast, Defendants argue the disputed language covers APT's copyright infringement claim. In support of this argument, Defendants assert APT accused them of copyright infringement before the Release was executed. In support of this assertion, Defendants cite to e-mails between Price and Linda Kurokawa, the Director of Community Services & Business Development at MiraCosta College. Those e-mails reflect that Blume called MiraCosta College to tell them that Teleskills was "using his copyrighted material." (Price Decl., Ex. A.) That evidence is inadmissible hearsay to prove that Teleskills was using APT's copyrighted material, but it is admissible as nonhearsay evidence to show that a copyright dispute existed between the parties. (*See* Pl.'s Objections to Evid. at 2.)

Defendants argue the language of the Release supports their position that APT released the present claims. In support of this argument, Defendants rely on two portions of the Release. First, they rely on the language stating the parties were releasing all claims "arising from or in any manner related to the dispute." Defendants argue the copyright claim is related to the employment dispute, and therefore covered by the Release. Although it appears Cawley created the materials at issue while he was employed by APT, there is no evidence that Cawley initiated a dispute with APT after terminating his employment with the company. Rather, the only individual Defendant that initiated a dispute with APT was Price, who accused APT of failing to pay him commissions under his independent contractor agreement. APT resolved that dispute by paying Price according to the terms of the Release. There was no payment between APT and Cawley, nor was there any mention of copyright issues in the Release. Defendants' argument that the copyright claim arises from or is related to the employment dispute is unconvincing. At a minimum, the competing evidence suggests that the Release is ambiguous as to its scope.

Second, Defendants point to the 1542 waiver in the Release. That waiver extends to "all claims of every kind, nature and description whatsoever, known or unknown suspected or unsuspected, and any and all rights under the provisions of Sections 1542 if [sic] the Civil Code of California or under any comparable statute of any other jurisdiction." (Fuchs Decl., Ex. 5.) Construed in isolation, this waiver would cover all of APT's claims in this case. However, that is not how courts are to construe contracts. Rather, "[t]he whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other." Cal. Civ. Code § 1641.

When construed in this manner, the scope of the 1542 waiver is less clear. By its own terms, the Release recites that the parties "are involved in a disputes [sic] arising out of the employment of Cawley and Uribe by APT and an independent contractor agreement between Price and APT." (Fuchs Decl., Ex. 5.) It also states that the parties wish "to provide for a general and special mutual reciprocal release of any claims *now existing* by and between the Parties, to provide for the consideration hereinafter set forth." (*Id.*) (emphasis added). As mentioned, APT asserts the copyright dispute was not at issue by the time the Release was executed. (*See* Blume Decl. ¶ 10) ("... infringement of APT's copyrights was not at issue by the time we executed the Release ....") The absence of any reference in the Release to copyright disputes supports APT's position. Accordingly, the provisions in question of the Release appear to limit the scope of the 1542 waiver, or at a minimum, create an ambiguity as to its scope.

Based on the evidence presently before the Court, Defendants have not met their burden to show that the Release is unambiguous. Although the 1542 waiver supports their interpretation of the Release as covering the present claims, Plaintiff's interpretation of the Release is equally reasonable. In light of this ambiguity, Defendant is not entitled to summary judgment based on the Release.

### III.
### CONCLUSION

For these reasons, the Court denies Defendants' motion for summary judgment.

**IT IS SO ORDERED**.

DATED: September 28, 2010

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

HON. DANA M. SABRAW
United States District Judge