**FUCHS & ASSOCIATES, INC.**
  JOHN R. FUCHS, ESQ.   (SBN 82032)
       jrfuchs@earthlink.net
12100 Wilshire Boulevard, Suite M-50
Los Angeles, California 90025-7120
Telephone (310) 826-9700; FAX: (310) 826-9709

Attorneys for Defendants **TELESKILLS, LLC**, dba
**AMERI-SKILLS, BURT PRICE, THOMAS CAWLEY,
XAVIER URIBE and MARA GLENN**

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| APPLIED PROFESSIONAL TRAINING, INC., a California corporation,<br><br>         Plaintiff,<br><br>    v.<br><br>MIRA COSTA COLLEGE, entity unknown, TELESKILLS. LLC, dba AMERI-SKILLS, a California Corporation, BURT PRICE, an individual, THOMAS CAWLEY, an individual, XAVIER URIBE, an individual, MARA GLENN, an individual, JANIS AYDELOTT, an individual, and DOES 1 through 50, inclusive,<br><br>         Defendants. | CASE NO.   '10 CV 1372 DMS MDD<br><br>**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR DETERMINATION OF DISCOVERY DISPUTE -- PLAINTIFF'S REFUSAL TO RESPOND TO RELEVANT REQUESTS FOR PRODUCTION OF DOCUMENTS ON THE GROUNDS THAT DEFENDANTS HAVE VIOLATED THE PROTECTIVE ORDER**<br><br>**DATE:**     TBD<br>**TIME:**     TBD<br>**PLACE:**    TBD<br><br>Complaint Filed on June 29, 2010<br><br>Assigned to Honorable Dana M. Sabraw, Courtroom 10 |

1

**REPLY MEMO IN SUPPORT OF MOTION RE RESPONSES TO REQUESTS FOR PRODUCTION (BY TELE-SKILLS TO PLAINTIFF, SET FIVE, NOS. 37, 39-41 AND 43-49), CASE NO. '10cv1372 DMS MDD**

# I

# INTRODUCTION

In this action for copyright infringement and misappropriation of trade secrets, brought by Plaintiff Applied Professional Training, Inc. ("APT"), against a direct competitor, Defendant TeleSkills dba Ameri-Skills ("Ameri-Skills"), and its three principals and one of its employees, Defendant TeleSkills dba Ameri-Skills ("Ameri-Skills") propounded requests for production of documents on APT, asking for *inter alia* for documents evidencing its databases, its electronic files used to create its training manuals, its resources used to create its training manuals, certain contracts with its students, and materials regarding APT's "AA" Degree program. However, rather than provide responses to these requests for production, and rather than asking the Court for permission to extend the date to respond, APT once again took the law into its own hands and simply refused to respond, asserting that APT had determined that that Defendant Burt Price ("Price") and Defendants' counsel, John R. Fuchs ("Fuchs"), had violated the Protective Order, by allegedly disclosing confidential information purportedly from a deposition, in a letter to an accreditation agency, and that as a result, APT was fearful of responding to this discovery.

Instead, after filing an Order to Show Cause Re: Contempt (the "OSC"), seeking a finding that confidential information had been disclosed and requesting numerous onerous and unreasonable remedies, most of which were denied, APT responded with nothing but objections, stating that it would provide actual responses and documents after the hearing on its OSC set for November 8th. APT refused to do so, and after waiting a week for supplemental responses and documents, with none forthcoming, the Defendants filed this third discovery motion, in part because the Defendants believed that APT was intentionally delaying its responses to discovery, because of the discovery cut-off on December 30th. Miraculously, after claiming an inability to provide supplemental responses and documents, APT was suddenly able to do so within a week after this motion was filed, but it did so with untimely objections. However, after APT refused to provide a substantive response to Defendants' discovery motion, Defendants filed its motion unilaterally, for two reasons.

First, the Defendants wanted actual responses to its discovery, and the relevant documents, and it has been Defendants' counsel's experience that once a discovery motion is filed, the party who

has refused to respond or claims it will respond later rather than sooner, suddenly is able to respond, which is exactly what occurred here. Secondly, the Defendants wanted to once again highlight for the Court, APT's cavalier attitude toward this entire case, and toward its discovery obligations in particular.

As has been repeatedly pointed out in this case, APT and its counsel operate from the belief that the statutes, rules and requirements apply to the Defendants and to their counsel, but not to APT and its counsel. For example, APT has refused to provide the critical evidence supporting its claim of copyright infringement of its two training manuals, stating in discovery responses and in deposition, **"You compare the two books yourself and figure it out on your own."** See Deposition of Steven Blume, at p. 335, line 28 to p. 336, line 1. Similarly, when asked to identify the specific emails APT claims is its evidence that Defendant Tom Cawley ("Cawley") had access to APT's manuals after he left APT's employ in April 2009, APT dumped 30,000 pages of documents on the Defendants and cavalierly stated, the evidence is in there, you find it. Further, APT feels free to demand that the Defendants provide their portion for APT's discovery motion within 24 hours, but when the Defendants make the identical demand of APT, APT and its counsel yelp like scalded dogs, charging the Defendants with bad faith for making such an allegedly unreasonable demand.

Here, in its Opposition, as it has done in its Opposition to Defendants' second discovery motion, APT now cavalierly claims that the Defendants' third discovery motion is "a waste of the Court's and the parties' time and resources," Opp. Memo p. 1, lines 8-9, because APT always intended to supplement its prior responses. Aside from the sheer irony and hypocrisy of APT and its counsel suddenly being concerned about the parties' resources, after APT has spent more than $300,000 in legal fees seeking to crush the Defendants with its superior financial resources,[1] APT's position is simply wrong. A party is not entitled to unilaterally extend the date for its discovery responses, even if there is some real or imagined belief that the other side is engaging in conduct in

---

[1] APT recently had delivered to Defendants' offices, seven deposition notices for the month of December, setting seven full-day depositions of the Defendants, their principals and their employees. Those depositions will cost Defendants a minimum of $30,000 in legal fees just to appear and defend, not including prep time. Was APT concerned about the "waste of the parties' resources," when it unilaterally set seven days of depositions in December?

3

REPLY MEMO IN SUPPORT OF MOTION RE RESPONSES TO REQUESTS FOR PRODUCTION (BY TELE-SKILLS TO PLAINTIFF, SET FIVE, NOS. 37, 39-41 AND 43-49), CASE NO. '10cv1372 DMS MDD

violation of a protective order.

In addition, APT argues in its Opposition that the APT was "within its rights" to withhold confidential information pending resolution of the alleged violations of the protective order, that Defendants refused to meet and confer in good faith, that the Defendants have "mischaracterized" APT's and its counsel's past bad faith meet and confer conduct, and that Defendants' requests for production were otherwise objectionable. Such arguments are nothing more than smoke and mirrors.

The Defendants therefore ask that their third discovery motion be granted, that APT be ordered to provide full and complete supplemental responses <u>without objection</u>, to these requests for production, and that APT and its counsel be ordered to pay monetary sanctions, in the amount of $2,500, representing a portion of the fees incurred for the Defendants to bring this motion.

## II

## THERE SIMPLY IS NO AUTHORITY FOR A PARTY TO UNILATERALLY EXTEND THE DATE FOR RESPONDING TO INTERROGATORIES

In their effort to justify their improper conduct in unilaterally extending their own 30-day deadline for discovery responses, APT and its counsel cavalierly argue that they were "within their rights" in refusing to provide confidential information pending the resolution of the <u>alleged</u> violation of the protective order. Curiously, APT cites the evidence code provision regarding the disclosure of trade secrets, but that provision goes to the issue of obtaining a protective order. <u>APT already has one</u>, so that provision is clearly inapplicable. No other authority has been cited, because there simply is no authority for a party to refuse to respond to discovery, because of a real or perceived belief that the opposing party has engaged in improper conduct.

Nonetheless, despite the complete absence of any authority to do so, APT objected to the document requests at issue here, first with a plethora of its standard boilerplate objections, and then with a specific objection to each request:

> "Information sought in this request constitutes "CONFIDENTIAL" [sic] under the governing Protective Order in this action, which the defendants are not honoring. Responding Party will supplement this response after the hearing currently set for November 8, 2011 on the Court's Order to Show Cause Why Sanctions Should Not Be Imposed (ECF Docket No. 72) on Plaintiff's Application regarding

4

REPLY MEMO IN SUPPORT OF MOTION RE RESPONSES TO REQUESTS FOR PRODUCTION (BY TELE-SKILLS TO PLAINTIFF, SET FIVE, NOS. 37, 39-41 AND 43-49), CASE NO. '10cv1372 DMS MDD

violations by defendants of the Protective Order upon adequate assurance that defendants will honor the Protective Order."

In so doing, APT unilaterally and cavalierly extended its time for responding to these requests, by expressing a concern over whether the Defendants are "honoring" the protective order. As noted above, there simply is no authority for a party to unilaterally extend the date for a discovery response, by expressing such a concern, or any concern. If that were a valid objection, any party could refuse to respond to any discovery, stating a concern that the opposing party will not appear for a properly noticed deposition, or that the opposing party may not answer interrogatories, or that the opposing party may not produce documents, or that the opposing party may file bankruptcy, or that the opposing party may not pay sanctions or attorneys fees that have been awarded, or that the opposing party may not appear for a settlement conference, or that the opposing party is not answering correspondence or telephone calls.

Clearly, there are a hundred excuses that could proffered by a party who chooses not to respond to discovery, or seeks to delay a response to discovery. No such excuse is valid, however, because if it were, there would be authority for doing so, and APT would have cited that authority. It did not, because there is no authority supporting APT's conduct. In fact, a party's <u>subjective</u> belief that the opposing party may be engaged in misconduct, cannot allow the other party to unilaterally, cavalierly and without consequence, extend the time for responding to discovery.

Suppose the tables were reversed. Some months ago, after the depositions of Price, Cawley and Uribe had been taken, representatives of APT attended an industry trade show and told anyone who would listen, that Ameri-Skills had lost its accreditation and either was out of business or soon would be out of business. That information was both false and defamatory. Based on such clearly unlawful conduct by representatives of APT, could the Defendants have then objected to all of APT's discovery, and delayed their responses, by asserting their concern that APT was engaged in spreading lies and defaming Ameri-Skills? Obviously, the Defendants could have done so, based on APT's contention that discovery response dates can be unilaterally extended based on the subjective concern that the opposing party is engaging in improper or unlawful conduct, <u>but the Defendants did not do so</u>, because doing so was and is improper!

5

REPLY MEMO IN SUPPORT OF MOTION RE RESPONSES TO REQUESTS FOR PRODUCTION (BY TELE-SKILLS TO PLAINTIFF, SET FIVE, NOS. 37, 39-41 AND 43-49), CASE NO. '10cv1372 DMS MDD

However, as has been repeatedly pointed out here, the concept of following the Rules, statutes, authorities and other legal requirements is foreign to APT and its counsel, because they believe they are above the law. Such Rules, statutes, authorities and other legal requirements do not apply to APT and its counsel–they only apply to the Defendants.

This Court cannot condone such unilateral and cavalier conduct by APT, because if it does, such unlawful conduct will continue. Just as the Court felt it had to come down hard on Price and Fuchs for the procedural violation of the protective order, the Defendants suggest that the Court should come down equally hard on APT and its counsel for such cavalier, abusive, unlawful, disingenuous and unprofessional conduct. APT should be ordered to provide full and complete supplemental responses <u>without objection</u>, to the requests for production, and ordered to pay monetary sanctions, in the amount of $2,500, representing a portion of the fees incurred for the Defendants to bring this motion.

### III

### APT HAD SEVERAL OTHER AVAILABLE OPTIONS, RATHER THAN UNILATERALLY EXTENDING ITS OWN DEADLINE

Without actually making the argument, APT and its counsel are essentially making the assertion here, that because of their subjective concern over whether the Defendants would honor the protective order, they had no choice but to withhold APT's responses. That argument is simply wrong, because there were several other options available, none of which was unlawful.

First, before the responses were due, APT could have filed a motion for a protective order, asking the Court to extend its date for a response, based on its concern over the alleged violation of the protective order. Second, APT could have made an Ex Parte Application for a protective order, seeking the same remedy, or third, APT could have requested a conference call with the Court to discuss the issue. A fourth alternative would have been for APT to prepare the responses and produce the documents, put them in a sealed envelope and lodge them with the Court, demonstrating that the responses were timely, but asking the Court not to provide the responses and documents to the Defendants until after the OSC hearing on November 8th and a determination as to whether Price

6

REPLY MEMO IN SUPPORT OF MOTION RE RESPONSES TO REQUESTS FOR PRODUCTION (BY TELE-SKILLS TO PLAINTIFF, SET FIVE, NOS. 37, 39-41 AND 43-49), CASE NO. '10cv1372 DMS MDD

and Fuchs had in fact disclosed information designated by APT's counsel as confidential, or had otherwise violated the protective order.

Sadly, but predictably, APT and its counsel chose none of these alternatives, any of which would have avoided this and Defendants' prior discovery motion. Instead, they simply and cavalierly decided to ignore the 30-day requirement for full and complete responses to these requests, and they served nothing but disingenuous objections.

Again, because a party cannot be permitted to cavalierly and unilaterally extend the deadline for responding to discovery, APT should be ordered to provide full and complete supplemental responses <u>without objection,</u> to these requests, and also should be ordered to pay monetary sanctions, in the amount of $2,500, representing a portion of the fees incurred for the Defendants to bring this motion.

### IV

### APT'S REMAINING ARGUMENTS ARE LITTLE MORE THAN ITS DISINGENUOUS EFFORT TO BLAME EVERYTHING ON THE DEFENDANTS

While continuously asserting that the Defendants must comply with all Rules, statutes and deadlines, APT and its counsel believe such legal requirements do not apply to them. In particular, there is a clear chambers rule stating that: **"Copies of meet and confer correspondence shall not be attached to the joint motion."** APT nonetheless insists on doing so, as well as filing separate declarations to recite chapter and verse on every email, conversation or other exchange between counsel, regarding efforts to meet and confer. Such conduct obviously has a chilling effect on meet and confer efforts, which is exactly the reason why the Chambers' Rule precludes the submission of meet and confer correspondence.

In addition, it is disingenuous for APT to content that its counsel's efforts to meet and confer are always in good faith, which Defendants' counsel's efforts are never in good faith. The pattern that emerges, however, is exactly the opposite. In fact, APT always demands capitulation to its demands, no matter how unreasonable, but it refuses to compromise with any of Defendants' counsel's requests, no matter how reasonable they are.

REPLY MEMO IN SUPPORT OF MOTION RE RESPONSES TO REQUESTS FOR PRODUCTION (BY TELE-SKILLS TO PLAINTIFF, SET FIVE, NOS. 37, 39-41 AND 43-49), CASE NO. '10cv1372 DMS MDD

More importantly, APT's and its counsel's argument here that it unilaterally extended the deadline for responding to discovery, because their own meet and confer efforts are always in good faith, while Defendants' counsel's meet and confer efforts are always in bad faith, is disingenuous to the point of being fraudulent. There were no meet and confer efforts <u>before</u> the responses were due, and APT's counsel simply chose to unilaterally extend its deadline for responding, based on a <u>subjective</u> concern that the Defendants were not "honoring" the protective order. Then, a week after the November 8th hearing, when Defendants' counsel requested the supplemental responses as promised, APT's counsel refused to provide any, asserting that they would do so in a couple of weeks. Because that response was totally improper, the Defendants filed this motion, after requesting substantive input from APT that was not provided.

Finally, as to the assertion that the Uribe interrogatories were otherwise objectionable, that argument is a desperate and disingenuous effort to justify APT's unlawful conduct. If the interrogatories were objectionable, APT should have stuck with it objections and allowed the Court to determine if its objections were valid. It did not, because its objections were more of the same boilerplate objections and were simply not valid.

For example, Defendants' request No. 37, asks: "Please produce all documents constituting or relating to all APT databases." APT objects to this request as vague, ambiguous and failing to describe with reasonable particularity, the item or category to be inspected. The problem, however, is not with the document request but with APT's allegations in its complaint. Specifically, in making its trade secret claims against these Defendants, APT alleged three categories of trade secrets. The first category is "Contract and Sales Databases and Lists," and the second is "Student Roster Databases and Lists." The third category is the catch-all, consisting of "Additional information, methods and processes." In order to prevent an ambush at trial, and because the allegation itself is so broad, vague and ambiguous, Defendants had no choice but to request "documents constituting or relating to all APT databases."

Similarly, APT argues that Defendants failed to mention requests number 45 through 48, and that "APT simply does not understand what documents" these requests are seeking. Again, however, the requests are simple and straightforward, and APT's argument is disingenuous.
8

REPLY MEMO IN SUPPORT OF MOTION RE RESPONSES TO REQUESTS FOR PRODUCTION (BY TELE-SKILLS TO PLAINTIFF, SET FIVE, NOS. 37, 39-41 AND 43-49), CASE NO. '10cv1372 DMS MDD

APT is well aware that once a student enrolls in one of its courses, it seeks to "lock in" that student by having the student contractually agree to take all future training courses with APT and not with any other provider. Analogizing such conduct to the MCLE requirements for lawyers, it would be the equivalent of an MCLE provider trying to contractually require that once a lawyer has taken one course with a specific MCLE provider, it then must take <u>all future courses</u> with that MCLE provider and is therefore contractually prohibited from taking training courses with anyone else.

The Defendants have been informed by its students of APT's efforts to "lock in" its students to future courses and "lock out" all other providers. Thus, by these requests, the Defendants simply seek production of the documents evidencing these efforts by APT, to "lock in" students to future courses at APT and "lock out" Ameri-Skills and other providers from offering courses to such students. If there are no such documents, then APT should say so. Apparently because of pure illegality of such a contract, APT now claims to be "confused" by these requests, objecting by asserting that "APT simply does not understand what documents" these requests are seeking. That objection is completely disingenuous and improper.

Without belaboring the issue, the Defendants submit that the balance of APT's objections to these requests, are equally disingenuous. If APT has no responsive documents, say so. The problem for APT is, however, that they have such documents, and they know they have such documents. If they deny having them, the Defendants will impeach them at trial when Defendants are forced to obtain these documents elsewhere.

This is similar to the feigned outrage by APT when it was accused by the Defendants of providing false and fraudulent financial statements to the accreditation agencies. APT denies having done so, but the Defendants are confident that they can prove at trial, as part of their unclean hands defense, that APT regularly engages in fraudulent and illegal conduct, of which its submission of fraudulent financial statements and its use of illegal contracts, are, to quote APT, just the tip of the iceberg.

Accordingly, APT's objections are all disingenuous, invalid and should be overruled, given the vagueness of its allegation about its vaunted "trade secrets."

9

REPLY MEMO IN SUPPORT OF MOTION RE RESPONSES TO REQUESTS FOR PRODUCTION (BY TELE-SKILLS TO PLAINTIFF, SET FIVE, NOS. 37, 39-41 AND 43-49), CASE NO. '10cv1372 DMS MDD

# V

# CONCLUSION

This Court simply cannot condone such conduct, where a party unilaterally and cavalierly extends its time to respond to discovery, and then blames the opposing party for its improper conduct. Moreover, it is pure irony and hypocrisy for APT and its counsel to have charged Price and Fuchs with violations of the protective order, and the Court having found that they violated the <u>procedural</u> provisions of the order, and then for APT to have refused to utilize several available procedural remedies, if APT and its counsel truly had a concern about Defendants' compliance with the protective order.

Further, considering that the Court came down very hard on Price and Fuchs at the November 8th, and made it clear that further violations of the protective order would result in harsh consequences, APT's responses to the requests for documents should have been supplemented the following day. They were not, as APT sought to delay its supplemental responses, obviously because of the discovery cut-off coming on December 30th. This Court should therefore come down hard on APT and its counsel. APT should be ordered to provide full and complete supplemental responses <u>without objection</u>, to these requests, and it also should be ordered to pay monetary sanctions, in the amount of $2,500, representing a portion of the fees incurred for the Defendants to bring this motion.

DATED: December 5, 2011                   **FUCHS & ASSOCIATES, INC.**

                                          /s/   John R. Fuchs
                                          John R. Fuchs
                                          jrfuchs@earthlink.net
                                          Attorney for Defendants
                                          TELESKILLS. LLC, dba AMERI-SKILLS,
                                          BURT PRICE, THOMAS CAWLEY,
                                          XAVIER URIBE and MARA GLENN
                                          Email: jrfuchs@earthlink.net