John D. Alessio (Bar No. 174900)
Barry F. Soalt (Bar No. 171651)
Ryan C. Caplan (Bar No. 253037)
PROCOPIO, CORY, HARGREAVES &
 SAVITCH LLP
525 B Street, Suite 2200
San Diego, California  92101
Telephone:   619.238.1900
Facsimile:    619.235.0398

Attorneys for Plaintiff,
APPLIED PROFESSIONAL TRAINING, INC.

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| APPLIED PROFESSIONAL TRAINING, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>MIRA COSTA COLLEGE, entity unknown; TELESKILLS, LLC, d/b/a AMERI-SKILLS, a California corporation; BURT PRICE, an individual; THOMAS CAWLEY, an individual; XAVIER URIBE, an individual; MARA GLENN, an individual; JANIS AYDELOTT, an individual; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No.: 3:10-cv-01372 DMS (MDD)<br><br>***EX PARTE* MOTION OF PLAINTIFF APPLIED PROFESSIONAL TRAINING TO CONTINUE PRODUCTION OF SUPPLEMENTAL EXPERT REPORT DUE TO DEFENDANTS' FAILURE TO COMPLY WITH DISCOVERY PURSUANT TO THIS COURT'S APRIL 26, 2012 ORDER (Doc. No. 160)**<br><br>Crtrm:         10<br>Judge:         Hon. Dana M. Sabraw<br>Magistrate:  Hon. Mitchell D. Dembin<br><br>Complaint Filed:  June 29, 2010<br>Trial Date:           June 18, 2012 |

Plaintiff APPLIED PROFESSIONAL TRAINING, INC. ("APT" or "Plaintiff") respectfully submits the following *Ex Parte* Motion to Continue Production of Supplemental Expert Reports due to the failure of Defendants TELESKILLS, LLC, d/b/a Ameri-Skills ("TeleSkills"), BURT PRICE, THOMAS CAWLEY, XAVIER URIBE, and MARA GLENN (collectively, "Defendants") to Comply with Discovery Pursuant to this Court's April 26, 2012 Order (ECF Doc. No. 160).

I. **INTRODUCTION**

Defendants' litigation strategy has been evident since the inception of this lawsuit: simply stonewall discovery to prevent APT from obtaining relevant information, even in the face of numerous Court orders compelling otherwise. Throughout this case, Defendants have refused to comply with their discovery obligations, thereby forcing APT to bring a motion to obtain even the most basic discovery at every turn only to simultaneously contend APT cannot establish its claims *due to Defendants' pervasive obfuscation*. Recently, Defendants sought to capitalize on their previous failure to produce discovery by seeking *in limine* to exclude APT's expert, Patrick F. Kennedy, Ph.D., from testifying as to the issue of APT's damages. Fortunately, the Court saw through this ploy, noting expressly that "[t]he record reflects Defendants did not produce all the information necessary for Dr. Kennedy to include his opinions on Plaintiff's damages in his expert report." (ECF Doc. No. 160 at 2:1-2.) The Court then allowed APT to designate discovery Defendants failed to produce, with the express order that Defendants produce said discovery on or before May 9, 2012. (*Id.* at 2:10-14.) Predictably, Defendants responded with blanket objections that had already been rejected by the Magistrate Judge in prior discovery disputes and produced a mere fifteen (15) pages of documentation, which is a scant excuse for a production given the eleven (11) categories requested.

Unfortunately, when confronted with this deficiency, Defendants' counsel regurgitated the same line of rhetoric used to further their litigation strategy of not participating in discovery, driving up APT's fees, and forcing APT to seek relief from the Court at every turn. Because Defendants failed to produce the discovery mandated by this Court's April 26, 2012 Order (ECF Doc. No. 160), APT respectfully requests the Court compel Defendants to comply with APT's discovery requests and continue APT's supplemental expert report production date correspondingly.[1]

---

[1] It is anticipated Defendants will argue that APT is seeking to continue the trial because "it is not prepared for this case." Quite the contrary, APT does not want a trial continuance; rather, it wants the discovery to which it is entitled and should have been provided had Defendants complied with their discovery obligations. APT is hopeful that with further Court enforcement, the current trial schedule can remain intact.

II. **STATEMENT OF PERTINENT FACTS**[2]

In April 2011, APT propounded discovery requesting various aspects of TeleSkills' financials from the prior five (5) years. TeleSkills provided written responses containing boilerplate objections and stating it would produce responsive, non-privileged financial documentation. Thereafter, TeleSkills produced only limited financial documentation for 2009 and no financial documentation for the other years encompassed within APT's requests. APT propounded additional discovery in November 2011, which was objected to in its entirety by Defendants. After extensive meet and confer, which included discussion of the relevance of this information to the issue of damages for expert review, the parties were forced to continue the exchange of expert reports and ultimately APT was forced to bring a motion to compel the discovery sought, which was granted. Defendants were ordered to produce all responsive financial information and documentation no later than January 31, 2012. (ECF Doc. No. 126.)

Concurrently, APT sought to take the Rule 30(b)(6) deposition of TeleSkills on the issue of its finances. However, Defendants sought to avoid this deposition by seeking a protective order without any legal basis at the eleventh hour while simultaneously refusing to appear. The Court saw through this ploy and denied Defendants' specious motion in less than 24-hours, ordering the deposition to go forward. (ECF Doc. Nos. 108 and 110.) Nevertheless, TeleSkills failed to appear for the deposition, necessitating another motion to compel by APT, which was granted. (ECF Doc. No. 124.)

After an extension granted by APT, TeleSkills' Rule 30(b)(6) deposition was scheduled for February 13, 2012. At that deposition, TeleSkills made another scant production, and its designated representative was instructed not to answer twenty-five (25) questions relating to its finances.

Meanwhile, Defendants sought to capitalize on their failure to provide discovery relating to their finances by bringing a motion *in limine* to exclude all testimony and opinions by APT's

---

[2] A more thorough factual background of APT's prior efforts to obtain discovery relating to Defendants' financials (as directly relevant to APT's damages) is laid out in APT's Opposition to Defendants' Motion in Limine for an Order Excluding All Testimony and Opinions by the Expert Retained by Plaintiff (*see* ECF Doc Nos. 141 and 129, respectively). A truncated version of these background facts is set forth herein for context.

3

1 expert, on the grounds that APT's expert's report was incomplete. (*See* ECF Doc. No. 129.)
2 Defendants criticized APT's expert report by virtue of their own expert opining that the
3 documents provided do not support anything but a superficial, high-level analysis. (*Ibid.*)

4     In response, APT detailed the obstruction and obfuscation perpetrated by Defendants
5 throughout the discovery process, which was the direct cause of any shortcoming in APT's expert
6 report. (*See* ECF Doc. No. 141.) The Court then allowed APT to identify outstanding discovery
7 and ordered Defendants to provide that information as requested by APT "on or before May 9,
8 2012." (ECF Doc. No. 160 at 2:10-14.) In turn, APT would have until May 16, 2012 to produce
9 its supplemental expert report taking into account the information produced by Defendants. (*Id.*
10 at 2:15-16.) APT consulted with its expert (Dr. Kennedy)'s office and forwarded its final
11 document request to Defendants. (*See* Declaration of John D. Alessio ("Alessio Decl."), ¶¶ 3-4;
12 Exhibit A.)

13     In response, Defendants produced written responses along with a mere fifteen (15) pages
14 of documentation, only four (4) of which contained any financial information. (Alessio Decl., ¶
15 5; Exhibit B.) Of this production, however, four (4) pages had previously been produced,
16 meaning the production was actually only eleven (11) pages of new documentation. (Alessio
17 Decl., ¶ 5.) Defendants also served blanket objections to the bulk of categories requested by
18 APT. (Alessio Decl., ¶ 5; Exhibit B.) Ultimately, in total, Defendants have produced minimal
19 documentation in response to extensive discovery requests seeking numerous aspects of
20 TeleSkills' financials from 2006 to the present.

21     APT immediately requested additional documents for a meaningful response on or before
22 May 11, 2012, with a request that Defendants consider a two (2) day extension on the timeline to
23 supplement the expert reports. (Alessio Decl., ¶ 6; Exhibit C.) Defendants rebuffed the idea and
24 forced this motion. (Alessio Decl., ¶ 7; Exhibit D.) Because Defendants continue to disregard
25 their discovery obligations, even in the face of multiple court orders compelling compliance,
26 APT is forced (once again) to seek court intervention. Accordingly, APT brings the instant
27 motion to continue the production of its supplemental expert report until after such time
28

1  Defendants produce the discovery mandated pursuant to this Court's April 28, 2012 Order (Doc.
2  No. 160.).

## III. DEFENDANTS CONTINUE TO WITHHOLD RESPONSIVE DISCOVERY RELEVANT TO THE ISSUE OF APT'S DAMAGES, FURTHER FRUSTRATING APT'S EXPERT'S SUPPLEMENTAL REPORT

### A. TeleSkills' Financial Information is Critical to APT's Damages Analysis

As previously mentioned by APT, under the Copyright Act a copyright owner who prevails in a statutory infringement action is entitled to recover "any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages." (17 U.S.C. § 504(b); *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001 (9th Cir. 1985).) A prevailing plaintiff is also entitled to an award of an infringer's profits at common law. (See *Smith v. Little Broan & Co.*, 273 F.Supp. 870 (S.D.N.Y. 1967), *aff'd*, 396 F.2d 150 (2d Cir. 1968).) Further, the Copyright Act even sets forth specific types of financial information that is relevant to the damages analysis: "In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work." (17 U.S.C. § 504(b).) As to the trade secret claims, these documents are further relevant to support the "head start" damages, reasonable royalties, and disgorgement.

Despite these express statutory guidelines on what information is relevant to APT's damages analysis, Defendants refused (and continue to refuse) to provide any such relevant information in response to APT's discovery requests, even in the face of this Court's April 26, 2012 Order mandating their compliance. Rather, Defendants withhold and heavily filter relevant responsive information, preventing a thorough analysis by APT or its experts.

### B. Defendants Production is So Internally Inconsistent that It Evidences Purposeful Withholding and Refusal to Comply

Of the categories of documents requested by APT, Defendants have produced only a minute percentage of responsive documentation. Rather than provide a complete production

encompassing the requested aspects of their financials relevant to APT's damages analysis, Defendants have provided only scant, high-level, year-end figures specially prepared for this litigation. Moreover, from the documents actually produced by Defendants as well as subpoenaed from third parties, it is clear that significant amounts of responsive documentation has been withheld from production. Below is an overview of the current status of production for each of these categories.

### 1. Financial Statements (Including Balance Sheets, Income Statements, and Statements of Cash Flow) from January 2009 to the Present

In response to these categories, Defendants have produced only high-level, year-end Profit/Loss statements for calendar years 2009, 2010, 2011, and January through March 2012 (each consisting of only one or two pages). (Alessio Decl., ¶ 9.) Thus, in response to requests seeking over three years of financial statements, *Defendants have produced a scant few pages*. This complete lack of supporting and detailed documentation (whether as quarterly, monthly, weekly, or daily accountings) provides an unworkable set of overall figures from which APT and its experts are supposed to evaluate those revenues associated with the classes and materials at issue in APT's copyright infringement and trade secret misappropriation claims. The high-level figures provided fail to show any underlying correlation between TeleSkills' overall year-end numbers and the specific classes, copyrights, and trade secrets at issue in this lawsuit. Defendants' own expert criticized APT's analysis for this very reason. Indeed, this exclusion is no accident, as Defendants instead seek to have APT rely exclusively on their deposition testimony of how these figures were compiled, while simultaneously preventing APT and its experts from independently verifying the numbers based on the actual underlying data.

### 2. Bank Statements for All Checking, Saving, Merchant, and/or Investment Accounts, Including All Documents Supporting All Included Transactions, from January 2009 to the Present

Despite multiple requests for TeleSkills' bank statements (which are relevant and integral for the same reasons stated in the preceding section), Defendants have failed and refused to produce bank statements in this litigation. Rather, APT did not receive any responsive bank

statements until a third party, Accurate Bookkeeping & Tax Service, Inc. ("ABTX"), produced the limited bank statements of Defendants in its possession. (Alessio Decl., ¶ 10.) However, this production still only covered March 2009 through January 2010, *leaving **twenty-eight (28) months** of responsive TeleSkills bank statements (January-February 2009; February 2010 to the present)* **not produced by Defendants**. Indeed, if not for this third party, APT would not have any bank statements of TeleSkills.

Additionally, ABTX produced three (3) months of bank statements for Mira Costa College Alternative Energy Training ("MCCAE"), which is the joint venture between Defendants and former defendant Mira Costa College. (Alessio Decl., ¶ 11.) Despite the requested time period of January 2009 to the present, ABTX produced only three (3) responsive MCCAE bank statements: July-August 2009, September-October 2009, and December 2009-January 2010. (*Ibid.*) Suffice it to say, this production is grossly deficient. This is particularly troubling given that at the Rule 30(b)(6) deposition on financials, TeleSkills testified that

(Alessio Decl., ¶ 11; Exhibit E.)

Moreover, despite stating in their recent written responses that they would produce portions of TeleSkills' monthly bank statements (which would still be incomplete), Defendants' attorney responded to APT's May 10th meet and confer request by unequivocally stating that <u>no further documents would be produced</u>. (Alessio Decl., Exhibits B and D.) This, coupled with the knowledge that further bank statements are in existence, evidences Defendants' continuing egregious pattern of discovery abuses.

### 3. Detailed General Ledgers from 2009 to the Present

In response to this category, Defendants produced a single general ledger, entitled "as of December 31, 2009." (Alessio Decl., ¶ 12.) Again, this year-end summary lacks the sufficient detail for the referenced transactions occurring in 2009. Additionally, it references MCCAE bank transactions for which no corresponding bank statements were produced. (*Ibid.*; *See also,* previous section, *supra.*) Moreover, Defendants failed to produce *any* general ledgers for years 2010 through the present. (Alessio Decl., ¶ 12.) Again, this information is highly relevant and integral to APT's and its expert's ability to reconcile and verify the year-end numbers with

respect to the revenues associated with the copyrights and trade secrets at issue in this lawsuit, as well as Defendants' deposition testimony relating to these expenses.

### 4. Documents Supporting Any Employees, Consultants, Independent Contractors, Vendors, and Suppliers Hired and/or Paid (Including W-2's, 1099's, Check Copies, Check Registers, Credit Card Statements, Payroll Reports/Registers, Pay Statements, and Other Payroll Records) from 2009 to the Present

Defendants have failed to produce *any* such documentation supporting the expenses associated with employees, consultants, independent contractors, vendors, or suppliers in connection with the classes offered by TeleSkills, despite previously testifying that _____ (Alessio Decl., ¶ 13; Exhibit E.) This information is relevant and integral to the issue of apportionment of costs as related to the specific copyrights and trade secrets in this lawsuit. Again, Defendants must provide this underlying detail to support and verify the high-level, year-end figures found in the year-end profit/loss statements, as well as TeleSkills' deposition testimony. In connection with its analysis of profits attributable to the relevant copyrights and trade secrets, APT must also be able to accurately apportion relative costs.

In their written responses, Defendants take the position that they have not hired employees or consultants. (Alessio Decl., Exhibit B.) However, TeleSkills' representative testified in its Rule 30(b)(6) deposition that _____ (Alessio Decl., Exhibit E.) Neither _____ nor the financial statements have been produced to date, despite _____ (Alessio Decl., ¶ 13; Exhibit E.) For the reasons stated above, this documentation is relevant, responsive, and must be produced.

### 5. Tax Returns and Work Papers from Internal or External Accountants and Tax Preparers from 2009 to the Present

Defendants assert that TeleSkills has filed for, and obtained, an extension to file its 2011 tax returns; however, they have not produced any documentation supporting that contention.

(Alessio Decl., ¶ 14.) Such documentation would be responsive to APT's discovery requests and thus should have been produced, particularly in light of Defendants' stated inability to comply due to this extension.

### 6. Sign-In Sheets by Class/Course from 2009 to the Present

Defendants have steadfastly refused to produce the individual sign-in forms for the various classes offered by TeleSkills, despite direct discovery requests by APT for this documentation. (Alessio Decl., ¶ 15.) Instead, Defendants prepared a "Telecom Students" list and produced that instead. (*Ibid.*) However, this is non-responsive in that it fails to produce the information as kept in the regular course of business, which in turn omits highly relevant aspects of this information for purposes of APT's expert's analysis.

The sign-in forms for TeleSkills' classes are relevant and probative in that they are necessary to validate how many students participated in (and paid for) each class offered by Defendants. This is the critical source documents from which Defendants have prepared their lists of students at issue. These documents are not only critical substantively, but they are also integral to APT's analysis of per class revenue, which is necessary to ascertain damages. Preliminarily, TeleSkills' representative testified that

(Alessio Decl., ¶ 15; Exhibit E.) By creating a list of students solely for purposes of responding to APT's discovery, Defendants prevent APT from apportioning those revenues associated with the relevant copyrights and trade secrets at issue in this lawsuit. Rather, APT is left with only a single revenue figure for each year, found in TeleSkills' year-end reports, which fails to provide any verification or apportionment for the issues in this lawsuit. APT and its experts need to be able to tie revenues of particular classes to validate Defendants' year-end reports and deposition testimony.

Additionally, an accurate comparison of APT's and Defendants' students is relevant to APT's trade secret misappropriation claims. Right now, APT has only a list specially prepared for this litigation instead of the records actually kept by Defendants in the normal course of their business. Without the actual sign-in and enrollment documents, APT is not provided with the relevant information relating to the source of the individual students, or the where/when/how any

1  student became a student of Defendants. Again, this is directly relevant to APT's claims of
2  misappropriation of student lists and should have been produced. Indeed, these documents
3  should have been forwarded with Defendants' Rule 26 disclosures.

## IV. CONCLUSION

APT should not have to fight for basic discovery at every juncture, and it certainly should not be punished for Defendants' continued obfuscation and dilatory tactics. Yet, that is precisely the result sought by Defendants and their counsel. This Court has been mindful of these tactics throughout this litigation, compelling discovery from Defendants on no less than six (6) occasions. Yet, Defendants continue their efforts to paint APT as the "bully" in this lawsuit and the party wanting to delay and continue. If Defendants truly had nothing to hide and believed this litigation was too costly, they would have simply complied with the discovery throughout and allowed this case to proceed at a fraction of the cost. However, their stated concerns are only for show. In reality, Defendants have sought nothing but to prevent the wheels of justice from moving forward, to the extreme prejudice of APT. APT has had to fight too hard thus far to be punished by Defendants' refusal to produce required discovery at the eleventh hour. Accordingly, APT respectfully requests the Court compel Defendants to comply fully with APT's requests and this Court's April 26, 2012 Order, and continue the supplemental expert report productions accordingly.

DATED: May 15, 2012

PROCOPIO, CORY, HARGREAVES & SAVITCH LLP

By: _s/ John D. Alessio_
John D. Alessio (john.alessio@procopio.com)
Barry F. Soalt
Ryan C. Caplan
Attorneys for Plaintiff,
Applied Professional Training, Inc.