FUCHS & ASSOCIATES, INC.
JOHN R. FUCHS, ESQ.   (SBN 82032)
    jrfuchs@earthlink.net
GAIL S. GILFILLAN, ESQ.   (SBN 168884)
    ggilfil@hotmail.com
12100 Wilshire Boulevard, Suite 800
Los Angeles, California 90025-7140
Telephone (310) 826-9700

Attorneys for Defendants TELESKILLS, LLC, dba
AMERI-SKILLS, BURT PRICE, THOMAS CAWLEY,
XAVIER URIBE and MARA GLENN

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| APPLIED PROFESSIONAL TRAINING, INC., a California corporation,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>MIRA COSTA COLLEGE, entity unknown, TELESKILLS. LLC, dba AMERI-SKILLS, a California Corporation, BURT PRICE, an individual, THOMAS CAWLEY, an individual, XAVIER URIBE, an individual, MARA GLENN, an individual, JANIS AYDELOTT, an individual, and DOES 1 through 50, inclusive,<br><br>　　　　　Defendants. | CASE NO.  '10 CV 1372 DMS MDD<br><br>**TRIAL BRIEF OF DEFENDANTS TELESKILLS, LLC, BURT PRICE, THOMAS CAWLEY, XAVIER URIBE AND MARA GLENN**<br><br>Date:　　**JUNE 18, 2012**<br>Time:　　**8:30 A.M.**<br>Place:　　**Courtroom D**<br>　　　　　**Edward J. Schwartz U.S. Courthouse**<br>　　　　　**940 Front Street**<br>　　　　　**San Diego, CA   92101**<br><br>Complaint Filed on June 29, 2010<br><br>Assigned to Honorable Dana M. Sabraw, Courtroom 9 |

---

1

DEFENDANTS' TRIAL BRIEF, CASE NO. '10 CV 1372 DMS MDD

TABLE OF CONTENTS

I. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. ALL OF THE CLAIMS HERE ARE BARRED BY THE RELEASE . . . . . . . . . . . . . . . 2

III. APT'S COPYRIGHT INFRINGEMENT CLAIM HAS NO MERIT . . . . . . . . . . . . . . . 4
    **A. APT Does Not Have a Valid Copyright For Its Study Guides.** . . . . . . . . . . . . . . 4
    **B. Ameri-Skills Did Not Copy Any Portion of APT's Study Guides.** . . . . . . . . . . . 6
    **C. APT Cannot Recover Either Statutory Damages Or Attorneys Fees.** . . . . . . . . . 6
    **D. APT Has No Damages.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

IV. APT CANNOT RECOVER ON ITS TRADE SECRET CLAIMS . . . . . . . . . . . . . . . . 8

V. THE FIVE REMAINING CLAIMS ALSO HAVE NO MERIT . . . . . . . . . . . . . . . . . 10
    **A. APT's Conversion Claim Against All Defendants.** . . . . . . . . . . . . . . . . . . . . 10
    **B. The Breach of Contract and Breach of Loyalty Claims**
        **Solely Against Glenn.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
    **C. The Unfair Competition Claim Against All Defendants.** . . . . . . . . . . . . . . . 12
    **D. The Conspiracy Claim Against All Defendants.** . . . . . . . . . . . . . . . . . . . . . 12

VI. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

FUCHS & ASSOCIATES, INC.
12100 WILSHIRE BOULEVARD
SUITE 800
LOS ANGELES, CALIFORNIA 90025-7140
(310) 826-9700


TABLE OF AUTHORITIES

Cases

| Case Name | Page(s) |
|---|---|
| *Accuimage Diagnostics Corp. v. Terarecon, Inc.*, 260 F. Supp. 2d 941, 952-954 (N.D. Cal. 2003) | 8, 9 |
| *Airdefense, Inc. v. Airtight Networks, Inc.*, 2006 U.S. Dist. LEXIS 55364, 8-9 (N.D. Cal. 2006) | 8 |
| *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.* (1994) 7 Cal. 4th 503, 510-514 | 12 |
| *Callaway Golf Co. v. Dunlop Slazenger Group Americas, Inc.*, 318 F. Supp. 2d 216, 219 (D. Del. 2004) | 8, 9 |
| *Dataquill Ltd. v. High Tech Computer Corp.*, 2011 U.S. Dist. LEXIS 138565 (S.D. Cal. Dec. 1, 2011). | 8-9 |
| *Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 699-701 (9th Cir. 2008) | 6 |
| *DVD Copy Control Assn., Inc. v. Bunner* (2003) 31 Cal. 4th 864, 874-875 | 8 |
| *Entertainment Research Group v. Genesis Creative Group*, 122 F.3d 1211, 1217, 1217-1218 (9th Cir. 1997) | 4, 5 |
| *Facebook, Inc. v. Pacific Northwest Software, Inc.*, 640 F.3d 1034, 1039-40 (9th Cir. 2011) | 3 |
| *Feist Publications Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361, 344-353, 358-361 (1991) | 4, 5, 6 |
| *First Advantage Background Servs. Corp. v. Private Eyes, Inc.*, 569 F. Supp. 2d 929, 936 (N.D. Cal. 2008) | 8 |
| *Fremont Indemnity Co. v. Fremont General Corp.* (2007) 148 Cal. App.4th 97, 119, 124 | 10, 11 |
| *Jardin v. DATAllegro, Inc.*, 2011 U.S. Dist. LEXIS 84509, 5-6 (S.D. Cal. July 29, 2011). | 9 |
| *Leatt Corp. v. Innovative Safety Tech., LLC*, 2010 U.S. Dist. LEXIS 71362, 17-18 (S.D. Cal. 2010) | 8 |

*Martin v. Walt Disney Internet Group,*
   2010 U.S. Dist. LEXIS 65036 (S.D. Cal. June 30, 2010) .................. 6

*Mattel, Inc. v. MGA Entertainment, Inc.,*
   782 F. Supp. 2d 911, 987, 996, 2010 U.S. Dist. LEXIS 136922 (C.D. Cal. Dec. 27, 2010) 9, 11

*Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 762 (7th Cir. Wis. 2010) ............ 9

*Mortgage Specialists, Inc. v. Davey* (N.H. 2006) 904 A.2d 652, 665 .................... 8

*North Coast Industries v. Maxwell*, 972 F.2d 1031, 1033 (9th Cir. 1992) ................. 4

*Petro-Ventures, Inc. v. Takessian*, 967 F.2d 1337, 1341-42 (9th Cir. 1992) ............... 3

*Silvaco Data Sys. v. Intel Corp.,*
   184 Cal. App. 4th 210, 236, 239, 109 Cal. Rptr. 3d 27 (2010) .............. 13, 15

*Think Village-Kiwi, LLC v. Adobe Sys.*, 2009 U.S. Dist. LEXIS 32450, 7-8 (N.D. Cal. 2009) .. 8

*Thrifty-Tel, Inc. v. Bezenek* (1996) 46 Cal. App.4th 1559, 1565 .................... 11

*Walsh v. Chez*, 583 F.3d 990, 994 (7th Cir. 2009) ............................ 9

*Yue v. Storage Tech. Corp.,*
   2008 U.S. Dist. LEXIS 68920, 12-13 (N.D. Cal. Aug. 6, 2008). ............... 6-7

Statutes

17 U.S.C. § 412 ................................................. 6

17 U.S.C. § 504 ................................................. 6

California Civil Code § 1542 ........................................ 3

California Civil Code §§ 3426 *et seq.*,
   California Uniform Trade Secrets Act ("CUTSA") ................. 8, 9, 12, 13

Federal Rules of Civil Procedure, Rule 11 .............................. 2

Federal Rules of Civil Procedure, Rule 26(a)(2)(B) ....................... 7

Federal Rules of Civil Procedure, Rule 37(c) ............................ 8

Other

5 Witkin, Summary of Cal. Law (10th ed. 2005) Torts, § 702, p. 1025 ............. 11

FUCHS & ASSOCIATES, INC.
12100 WILSHIRE BOULEVARD
SUITE 800
LOS ANGELES, CALIFORNIA 90025-7140
(310) 826-9700

# I

# INTRODUCTION

This is an action for copyright infringement, misappropriation of trade secrets, breach of contract and other alleged wrongdoing, by a Plaintiff engaged in educational training in the electrical power industry, against another educational entity and its owners and employees, engaged in the same type of training in the same industry. Plaintiff Applied Professional Training, Inc. ("APT") alleges that Defendant TeleSkills, LLC, dba Ameri-Skills ("Ameri-Skills) and its owners have infringed APT's copyrights in and to its educational training manuals and materials, known as Study Guides, by copying those Study Guides and using them in Ameri-Skills' Solar Photo Voltaic and Solar Telecommunications courses. APT further alleges that APT's former employees, Defendant Mara Glenn and former Defendant Janis Aydelott, who are or were independent contractors for Ameri-Skills, misappropriated and/or misused certain trade secrets belonging to APT, and with the other Defendants, are using those trade secrets to unfairly compete against APT.

The truth, however, is completely different. First of all, within hours after Defendants Thomas Cawley ("Cawley) and Xavier Uribe ("Uribe") resigned from, or were fired by, APT, and Defendant Burt Price terminated his independent contract with APT, to start operations as Ameri-Skills, in competition with APT, a dispute arose between the parties, in which APT claimed that Cawley, Uribe, Price and Ameri-Skills were using APT's copyrighted materials, trade secrets and confidential information, and were violating non-compete clauses in their contracts. After APT threatened to sue, the parties entered into a mutual release of all known and unknown claims, past, present and future, which the Defendants assert bars all of the claims asserted here.

Secondly, as to the copyright infringement claim, Defendants assert that it has no merit, for a number of reasons, including that APT's compilation copyright is at best very "thin," that if it exists, it applies only to the selection, arrangement and coordination of the factual material in the Study Guides but not to the factual material itself, because facts cannot be copyrighted. However, APT has admitted that all of the factual material in these Study Guides came from public sources, and both the content and the order of presentation was dictated by the certification entity. Also, there is no evidence of access nor any evidence of copying by the Defendants.

As to the misappropriation of trade secrets, unfair competition, breach of contract and conspiracy claims, those claims also have no merit, for several reasons. First, the names of APT's students, instructors, union contacts and company contacts are not trade secrets, because they are publicly known or easily discoverable. Second, APT has never provided the name of a single student who was contacted by Ameri-Skills from APT's lists and took an Ameri-Skills course rather than an APT course. Thus, APT has no admissible evidence to support these claims nor does it have any damages on any of these claims.

In fact, the Defendants will prove at trial that this entire lawsuit is frivolous and without the least bit of merit, and it constitutes nothing more than an effort by APT, with its superior financial resources, to improperly use the legal system to attempt to crush a competitor. Defendants submit that one or more of APT's claims will be dismissed as a matter of law before this case ever gets to a jury, and as to any remaining claims, Defendants expect that the complete absence of admissible evidence to support these claims, will result in a complete defense verdict, after which Defendants will seek their costs and attorneys fees and may even seek Rule 11 sanctions.

## II

## ALL OF THE CLAIMS HERE ARE BARRED BY THE RELEASE

In June 2009, all of the parties to this action, except Glenn, agreed to resolve <u>all of their disputes</u>, including claims for copyright infringement, for misappropriation of trade secrets and breach of confidentiality agreements, pursuant to a Settlement Agreement and Mutual Reciprocal Release, effective as of June 11, 2009 (the "Release"), to release all of their known and unknown claims against each other.

The Release provides at Paragraph 2B:

> "The Parties agree to completely, fully and finally release and forever discharge one another, and their agents, employees, representatives and attorneys, from and against any and all claims, demands, liability, damages, causes of actions, costs, expenses and compensation of every kind and nature whatsoever, past, present, or future, known or unknown, arising from or in any manner related to the dispute."

The Release then provides at Paragraph 2C:

> "It is understood and agreed that this release extends to all claims of every kind, nature and description whatsoever, known or unknown suspected or

unsuspected, and any and all rights under the provisions of Sections 1542 if the <u>Civil Code of California</u> or under any comparable statute of any other jurisdiction. The Parties expressly acknowledge that they each have been represented by counsel in connection with this settlement, and that they are familiar with and expressly waive and relinquish every right or benefit that they have or may have under the provisions of Civil Code section 1542, which reads as follows:

> 'A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.'

A year ago, however, in *Facebook, Inc. v. Pacific Northwest Software, Inc.*, 640 F.3d 1034, 1039-40 (9th Cir. 2011), a case dealing with a dispute over the creation of Facebook that was recently popularized in the movie entitled "The Social Network," the Ninth Circuit, citing *Petro-Ventures, Inc. v. Takessian*, 967 F.2d 1337, 1341-42 (9th Cir. 1992), upheld the validity of a settlement agreement containing the same type of broad language as in the Release executed by the parties to this action in June 2009, against the assertions that the settlement agreement was missing material terms and therefore was unenforceable:

> "Release of claims. The Settlement Agreement grants 'all parties' 'mutual releases as broad as possible'; the Winklevosses 'represent and warrant' that '[t]hey have no further right to assert against Facebook' and 'no further claims against Facebook & its related parties.' The Winklevosses maintain that they didn't discover the facts giving rise to their Rule 10b-5 claims until after they signed these releases. They argue that the releases don't foreclose their challenge to the Settlement Agreement because Section 29(a) of the Exchange Act precludes a mutual release of unknown securities fraud claims arising out of negotiations to settle a pending lawsuit. See 15 U.S.C. § 78cc (a) (voiding '[a]ny condition, stipulation, or provision binding any person to waive compliance with' the securities laws).
>
> *Petro-Ventures* dealt with just such a settlement agreement. 967 F.2d at 1338-39. We held that parties possessing roughly equivalent bargaining strength could release all claims arising out of the transaction that gave rise to the litigation, even though they hadn't yet discovered some of the securities claims when they signed the settlement. *Id.* at 1342. Such a release is valid if it 'is unambiguous in conveying the intent of the parties to release all unknown claims.' *Id.* The Settlement Agreement the parties negotiated granted 'releases as broad as possible.' As sophisticated litigants, the Winklevosses or their counsel should have been familiar with *Petro-Ventures* and understood that the broadest possible release includes both known and unknown securities claims. <u>An agreement meant to end a dispute between sophisticated parties cannot reasonably be interpreted as leaving open the door to litigation about the settlement negotiation process.</u> See *Petro-Ventures*, 967 F.2d at 1342 (discussing the parties' 'intent to end their various disputes . . . once and for all' (ellipses in original)). <u>A release in such an agreement would be useless to end litigation if it couldn't include claims arising from the settlement negotiations.</u> Cf. *Sander v. Weyerhaeuser*, 966 F.2d 501, 503 (9th Cir. 1992)."

Discovery in this action since Defendants' Summary Judgment Motion was denied, with the Court then finding that the evidence was "at best ambiguous," has revealed that in opposing that Motion, APT and its representatives intentionally misrepresented to this Court, and continue to misrepresent to this Court, that the Release was only intended to cover "employment disputes" between the parties. It was not so limited. The evidence at trial will show that all of the claims asserted here, were <u>known claims</u> at the time of the Release and that all of the parties <u>intended</u> to release all of those claims, in order to avoid any litigation in the future.

The Defendants will prove at trial that the phrase "any and all claims, demands, liability, damages, causes of actions, costs, expenses and compensation of every kind and nature whatsoever, past, present, or future, known or unknown, arising from or in any manner related to the dispute," was intended by all parties to mean exactly what it says and was intended to release <u>all claims</u>. Accordingly, the Defendants expect a jury verdict that the Release bars all of the claims here.

## III

## APT'S COPYRIGHT INFRINGEMENT CLAIM HAS NO MERIT

### A. APT Does Not Have a Valid Copyright For Its Study Guides.

"To establish copyright infringement, the holder of the copyright must prove both valid ownership of the copyright and infringement of that copyright by the alleged infringer. See, e.g., *North Coast Indus. v. Maxwell*, 972 F.2d 1031, 1033 (9th Cir. 1992); *Sid & Marty Krofft Television v. McDonald's Corp.*, 562 F.2d 1157, 1162 (9th Cir. 1977). If the plaintiff copyright holder survives the first step by establishing that he or she owns a valid copyright, the plaintiff must then establish infringement by showing both access to the copyrighted material on the part of the alleged infringer and substantial similarity between the copyrighted work and the alleged infringing work. *North Coast*, 972 F.2d at 1033."

*Entertainment Research Group v. Genesis Creative Group*, 122 F.3d 1211, 1217 (9th Cir. 1997); see also *Feist Publications Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991) (A plaintiff may establish a claim of copyright infringement by showing (1) ownership of a valid copyright and (2) that the defendant copied protectable elements of the work.

To show that it has a valid copyright, the alleged owner of that copyright must first show both the originality and the non-functionality of its work. *North Coast Industries v. Maxwell*, 972 F.2d 1031, 1033 (9th Cir. 1992). Secondly, the alleged owner of the copyright must show that copying

FUCHS & ASSOCIATES, INC.
12100 WILSHIRE BOULEVARD
SUITE 800
LOS ANGELES, CALIFORNIA 90025-7140
(310) 826-9700

4
DEFENDANTS' TRIAL BRIEF, CASE NO. '10 CV 1372 DMS MDD

occurred, and that the defendant copied <u>protectible</u> elements of the work. *Feist, supra.*

Moreover, just because an owner's alleged copyrights have been registered with the Copyright Office, which is a pre-requisite to filing a copyright infringement action, does not mean that the work at issue is automatically entitled to copyright protection. "An accused infringer can rebut this presumption of validity," by offering "some evidence or proof to dispute or deny the plaintiff's prima facie case of infringement." *Entertainment Research Group, supra*, at 1217-1218.

The seminal case on compilation copyrights is *Feist, supra*, in which the Supreme Court held that "the copyright in a factual compilation is thin," that a plaintiff must prove "originality and creativity" in the "selection, coordination and arrangement" of the factual material that the plaintiff has compiled, that "only the compiler's selection and arrangement may be protected; the raw facts may be copied at will," that "the principal focus should be on whether the selection, coordination, and arrangement are sufficiently original to merit protection," and that "originality ... is the touchstone of copyright protection in ... fact-based works." *Feist*, at 344-353 and 358-361.

Thus, APT's task at trial will be to show the originality and creativity in the selection, coordination and arrangement of the factual material in its Study Guides. However, APT cannot do so, because Defendant Cawley, who assembled APT's solar Study Guides from publicly available material, will testify that the order of material presented was entirely dictated by the mandates, known as its "Learning Objectives," of the certification entity, the National Association of Certified Energy Practitioners ("NABCEP"). The NABCEP Learning Objectives, which education entities such as APT and Ameri-Skills are <u>required</u> to follow in order for their students to take the NABCEP Certification exam, set forth the ten specific <u>subjects</u> that must be taught in Solar Installer and PV for Telecomm courses, and these Learning Objectives also specify the exact order in which the specified material <u>must be taught</u>. With this Court having now ruled that APT must show at trial that it produced evidence of its "creativity and originality" in discovery, regarding the selection, coordination and arrangement of the material in its Study Guides, which is a showing APT cannot make, APT cannot prevail on its copyright infringement claim.

### B. Ameri-Skills Did Not Copy Any Portion of APT's Study Guides.

As the Supreme Court held in *Feist*, factual elements of a work can be copied at will. Nonetheless, Cawley will testify at trial that he did not have access to APT's Study Guides when he prepared Ameri-Skills' Study Guides, and APT has no evidence that he did. Also, Cawley will testify that he compiled Ameri-Skills' Study Guides from the same public sources that he accessed to assemble APT's Solar Installer Study Guide, with the same material and in the same order that was dictated by NABCEP. Thus, even if APT could show a valid copyright, it cannot show access and cannot show copying of <u>protectible</u> elements.

### C. APT Cannot Recover Either Statutory Damages Or Attorneys Fees.

Statutory damages and attorneys fees for copyright infringement are provided for in 17 U.S.C. § 504. However, 17 U.S.C. § 412, which is entitled "Registration as prerequisite to certain remedies for infringement," absolutely bars both statutory damages and attorneys fees, where the alleged infringement commenced prior to registration and the registration was not obtained within three months of first publication of the work. *Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 699-701 (9th Cir. 2008); see also *Martin v. Walt Disney Internet Group*, 2010 U.S. Dist. LEXIS 65036 (S.D. Cal. June 30, 2010) (Plaintiff's requests for statutory damages, enhanced damages, and attorney's fees are barred by § 412). Here, it is absolutely undisputed from APT's own Certificates of Copyright, that its three Study Guides were first published in 2008 and 2009, and its alleged copyrights were registered in May 2010.

Interestingly, however, this section does not bar an award of attorneys fees to the Defendants, if they prevail on APT's claim for copyright infringement:

> "Finally, Plaintiff also argues that attorney's fees should not be awarded because the alleged infringement commenced before the effective date of copyright registration. Opp. at 28. Plaintiff cites no support for this argument, and the authority is to the contrary. In fact, one treatise author has explained that: 'Very infrequently, the argument is advanced by a losing plaintiff that defendant cannot be awarded its attorney's fees because the work was not registered within three months from the date of first publication. This profoundly ignorant argument should be met with Rule 11 sanctions.... Both of the circuits to have had the misfortune to have the argument presented have correctly rejected it.' William F. Patry, *Patry on Copyright* § 22:204 (2008); see also *O'Well Novelty Co. v. Offenbacher, Inc.*, No. 99-1949, 2000 U.S. App. LEXIS 18526, 2000 WL 1055108, at *7 (4th Cir. 2000) ('it simply defies logic to conclude that an unsuccessful plaintiff's additional failure timely to register its

6
DEFENDANTS' TRIAL BRIEF, CASE NO. '10 CV 1372 DMS MDD

copyright serves to bar a court from awarding attorney fees to the prevailing defendant')). If the court makes a finding of noninfringement, 'there appears to be no requirement that the work be registered in order to award attorney's fees to a prevailing defendant.' Melville B. Nimmer and David Nimmer, *Nimmer on Copyright*, 14.10[A] n.3, Matthew Bender, 2007; see also, *Robinson v. Lopez*, 2003 U.S. Dist. LEXIS 24382, at *11-12, 69 U.S.P.Q.2D (BNA) 1241 (C.D. Cal. 2003) (awarding defendant attorney's fees under Section 505 even though plaintiff did not register the work at issue with the Copyright Office). For the above reasons, an award of fees [to the defendant] is proper."

*Yue v. Storage Tech. Corp.*, 2008 U.S. Dist. LEXIS 68920, 12-13 (N.D. Cal. Aug. 6, 2008).

### D. APT Has No Damages.

With neither statutory damages nor attorneys fees available to its for copyright infringement, APT's only possible recovery here would be compensatory damages. Curiously, however, APT made a motion in limine to bar evidence of its own financial condition and instead will seek its damages based solely on Ameri-Skills' financials. In direct defiance of that order, however, APT has listed its own financial documents on its Exhibit List.

More importantly, neither APT nor Ameri-Skills sells its Study Guides. They are <u>given</u> to the students on the first day of class as course materials, along with other books and written materials. Thus, APT cannot show any damages based on Ameri-Skills' profits, because Ameri-Skills has no profits from these books.

Moreover, after eight months of demanding every possible scrap of Defendants' financial information, including the <u>personal</u> unredacted bank statements of individual Defendants Price, Cawley and Uribe, which are completely irrelevant to any damage claim here against Ameri-Skills, APT has submitted a massive and weighty <u>seven-page Expert Report</u>, in which APT's expert <u>still</u> claims that he does not have sufficient information to provide a proper opinion. Clearly, APT's expert has made such a claim, because he cannot truthfully provide an opinion on damages. In fact, APT has none.

Furthermore, even this most recent Expert Report may be excluded at trial, because it fails to comply with Rule 26(a)(2)(B), which requires that experts disclose a "complete statement of all opinions to be expressed and the basis and reasons therefor" in their expert report. See also *Dataquill Ltd. v. High Tech Computer Corp.*, 2011 U.S. Dist. LEXIS 138565 (S.D. Cal. Dec. 1,

2011). " 'The purpose of these [expert] reports is not to replicate every word that the expert might say on the stand. It is instead to convey the substance of the expert's opinion . . . so that the opponent will be ready to rebut, to cross-examine, and to offer a competing expert if necessary.' *Walsh v. Chez*, 583 F.3d 990, 994 (7th Cir. 2009). They allow attorneys, not experts in the fields at issue, to prepare intelligently for trial and to solicit the views of other experts. *S.E.C. v. Koenig*, 557 F.3d 736, 744 (7th Cir. 2009)." *Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 762 (7th Cir. Wis. 2010). Based thereon, the Defendants expect to have to make another motion before or at trial, to preclude APT's expert, Patrick Kennedy, from offering any opinions or other testimony at trial, as required by Rule 37(c), or from even offering the defective opinions in his recent report.

Accordingly, Defendants submit that APT will not prevail on its copyright claim at trial,

## IV

## APT CANNOT RECOVER ON ITS TRADE SECRET CLAIMS

First of all, every one of the other claims in APT's claim alleges some sort of misuse or misappropriation of trade secrets claim, all of which are state court claims. In 1985, California enacted the California Uniform Trade Secrets Act ("CUTSA"), Civil Code §§ 3426 *et seq.*, which provides statutory rights to seek damages for misappropriation of trade secrets. *DVD Copy Control Assn., Inc. v. Bunner* (2003) 31 Cal. 4th 864, 874-875. Unfortunately for APT, however, numerous courts have held that the CUTSA preempts the field and bars all common law claims. *Accuimage Diagnostics Corp. v. Terarecon, Inc.*, 260 F. Supp. 2d 941, 952-954 (N.D. Cal. 2003); *Mortgage Specialists, Inc. v. Davey* (N.H. 2006) 904 A.2d 652, 665; *Airdefense, Inc. v. Airtight Networks, Inc.*, 2006 U.S. Dist. LEXIS 55364, 8-9 (N.D. Cal. 2006); *Callaway Golf Co. v. Dunlop Slazenger Group Americas, Inc.*, 318 F. Supp. 2d 216, 219 (D. Del. 2004); *Leatt Corp. v. Innovative Safety Tech., LLC*, 2010 U.S. Dist. LEXIS 71362, 17-18 (S.D. Cal. 2010); see also *Think Village-Kiwi, LLC v. Adobe Sys.*, 2009 U.S. Dist. LEXIS 32450, 7-8 (N.D. Cal. 2009), stating that "[o]ther courts have determined that CUTSA preempts common law claims that are based on the 'same nucleus of fact' as trade secret misappropriation," citing *K.C. Multimedia, Digital Envoy, Callaway Golf* and *AccuImage*; see also *First Advantage Background Servs. Corp. v. Private Eyes, Inc.*, 569 F. Supp.

8

DEFENDANTS' TRIAL BRIEF, CASE NO. '10 CV 1372 DMS MDD

2d 929, 936 (N.D. Cal. 2008), stating that "the existing authority favors preemption," citing *Cadence Design*, *Digital Envoy*, *Callaway Golf* and *Accuimage*.

> " 'California's Uniform Trade Secrets Act "occupies the field" of common law claims based on the misappropriation of a trade secret.' *Mattel, Inc. v. MGA Entertainment, Inc.*, 782 F. Supp. 2d 911, 2010 U.S. Dist. LEXIS 136922, 2011 WL 1114250, at *44 (C.D. Cal. Jan. 5, 2011) (quoting *K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.*, 171 Cal. App. 4th 939, 954, 90 Cal. Rptr. 3d 247 (2009)). Thus, CUTSA preempts all claims resting on allegations of the misappropriation of confidential information. *Id.*; see also *Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 236, 109 Cal. Rptr. 3d 27 (2010) ('CUTSA provides the exclusive civil remedy for conduct falling within its terms, so as to supersede other civil remedies "based upon misappropriation of a trade secret." ' (quoting Cal. Civ. Code § 3426.7 (a)-(b))), overruled on other grounds, *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 120 Cal. Rptr. 3d 741, 246 P.3d 877 (2011). 'A claim cannot simply depend on a "different theory of liability" to survive [CUTSA's] supersessive effect." *Mattel*, 2010 U.S. Dist. LEXIS 136922, 2011 WL 1114250, at *44 (citing *K.C. Multimedia*, 171 Cal. App. 4th at 957-59). Rather, to avoid preemption, a claim 'must be based on more than "the same nucleus of facts" ' as a claim for misappropriation of trade secrets. *Id.* (quoting *K.C. Multimedia*, 171 Cal. App. 4th at 958). Thus, " '[i]f there is no material distinction between the wrongdoing alleged in a CUTSA claim and that alleged in a different claim, the CUTSA preempts the other claim.' " *Gabriel Techs. Corp. v. Qualcomm Inc.*, No. 08cv1992, 2009 U.S. Dist. LEXIS 98379, 2009 WL 3326631, at *11 (S.D. Cal Sept. 3, 2009) (quoting *Convolve, Inc. v. Compaq Computer Corp.*, 2006 U.S. Dist. LEXIS 13848, 2006 WL 839022, at *6 (S.D.N.Y. Mar. 28, 2006) (applying California law)) (internal alterations omitted). Put another way, to avoid CUTSA preemption, a claim must 'retain sufficient independent facts' to be viable after the ' "trade secret" facts are removed.' See *Gabriel Techs.*, 2009 U.S. Dist. LEXIS 98379, 2009 WL 3326631, at *12."

*Jardin v. DATAllegro, Inc.*, 2011 U.S. Dist. LEXIS 84509, 5-6 (S.D. Cal. July 29, 2011).

> "In an effort to align with the California courts that have addressed this issue, the Court concludes that UTSA supercedes claims based in misappropriation of confidential information, whether or not the information meets the statutory definition of a trade secret."

*Mattel, Inc. v. MGA Entertainment, Inc.*, 782 F. Supp. 2d 911, 987, 2010 U.S. Dist. LEXIS 136922 (C.D. Cal. Dec. 27, 2010).

Thus, when APT is forced to concede at trial, which it has refused to do for the past two years, that its conversion, breach of contract, breach of loyalty, unfair competition and conspiracy claims are entirely based on the same "nucleus of fact" and not on an "independent facts," these five claims must be dismissed, leaving APT with only a single statutory trade secret claim, on which APT also cannot prevail. In particular, APT has spent the entirety of the past 22 months alleging over and over again that the Defendants misappropriated APT's student list, instructor lists, company contacts,

union contacts and marketing materials, all of which are claimed to be trade secrets.

The first hurdle faced by APT is proving that this information is a trade secret, because it clearly is not. All of this information claimed by APT to be trade secrets, is readily available, readily discoverable and <u>not</u> secret. Moreover, even if APT could prove that this information is a trade secret, the fact of the matter is that APT cannot show <u>one penny</u> of damage from the alleged misuse or misappropriation of its "trade secrets," as not one student was ever contacted by the Defendants from these lists, and not one student cancelled an APT class and took an Ameri-Skills' class as a result. Also, not only are the names of the instructors not secret, they are independent contractors and therefore free to work for any company willing to pay for their services. As to the union contacts, this information is readily available on union websites, and both companies recruit their students from CWA employees by visiting the garages and making "tailgate presentations."

The real reason that APT has alleged these meritless claims, is to try to drive Ameri-Skills out of business, because APT cannot compete fairly in the marketplace. Thus, APT has had to resort to illegal tactics, such as by fabricating claims and evidence, defaming the Defendants and intentionally interfering with their contracts and prospective economic advantage, in their effort to force the Defendants to throw in the towel. The fact is, however, that without any admissible evidence to support their trade secret claims, and without any damages for the alleged misuse or misappropriation of trade secrets, APT cannot recover on this claim.

## V

## THE FIVE REMAINING CLAIMS ALSO HAVE NO MERIT

### A. APT's Conversion Claim Against All Defendants.

The essence of conversion is "the wrongful exercise of dominion over the personal property of another." *Fremont Indemnity Co. v. Fremont General Corp.* (2007) 148 Cal. App.4th 97, 119. "The basic elements of the tort are (1) the plaintiff's ownership or right to possession of personal property; (2) the defendant's disposition of the property in a manner that is inconsistent with the plaintiff's property rights; and (3) resulting damages." *Id.* In order to state a claim for conversion, the plaintiff must identify some property in which he had property rights with which the defendant

could, and did, interfere. If the only arguable property identified in the complaint is a trade secret, and the only basis for any property right is trade secrets law, then a conversion claim predicated on the theft of that property is unquestionably "based upon misappropriation of a trade secret," and the conversion claim is preempted.

Conversion traditionally requires a taking of <u>tangible property</u>, and thus is not available to remedy the misappropriation of something like a trade secret. 5 Witkin, Summary of Cal. Law (10th ed. 2005) Torts, § 702, p. 1025; *Thrifty-Tel, Inc. v. Bezenek* (1996) 46 Cal. App.4th 1559, 1565. While this restriction has been relaxed, it has not been destroyed. As the Second District observed in *Fremont Indem. Co., supra*, 148 Cal. App.4th at 124, the expansion of conversion law to reach intangible property should not be permitted to "displace other, more suitable law."

> "[A] claim for conversion requires the existence of a property right, and 'information is not property unless some law makes it so.' *Silvaco*, 184 Cal. App. 4th at 239. Mattel cannot 'identif[y] any property right' in its confidential information 'outside of trade secrets law,' because no such property right exists under California law. *Id.*"

*Mattel v. MGA, supra*, at 996-97.

Thus, if the alleged conversion turns out to be a claim to conversion of the alleged trade secrets, the claim is preempted. If it is some other information or intangible property, it cannot constitute conversion, as "no such property right exists under California law," *Silvaco*, at 239, and even if it did, APT has not been dispossessed of the confidential information in which APT claims a "property right." *Thrifty-Tel, supra.*

### B. The Breach of Contract and Breach of Loyalty Claims Solely Against Glenn.

APT claims that Defendant Mara Glenn ("Glenn") breach her Confidentiality Agreement and/or her Severance and Release Agreement by allegedly turning over APT's student lists to Ameri-Skills. Aside from the fact that there is no evidence to support that claim, and it is entirely based on emails that have been misrepresented and misinterpreted by APT, the only remedy available to APT, if it can prove a breach of either Agreement, is for injunctive relief, pursuant to the terms of the agreements. Unfortunately for APT, if it cannot prove a breach, Glenn is entitled to her attorneys fees.

### C. The Unfair Competition Claim Against All Defendants.

Again, if this claim is entirely based on the alleged misappropriation and/or misuse of APT's trade secrets, as is alleged in the Complaint, it is preempted by the CUTSA. If it is based on something other than the misuse of APT's confidential information, which has not been alleged but may be used to ambush the Defendants at trial, the only remedies available would be injunctive relief, and disgorgement of profits, of which there are none. Thus, this claim is also likely to fail at trial, because there is no admissible evidence to support it.

### D. The Conspiracy Claim Against All Defendants.

Again, if this claim is entirely based on the alleged misappropriation and/or misuse of APT's trade secrets, as is alleged in the Complaint, it is preempted by the CUTSA. If it is based on anything else, it is barred by the agent's immunity rule. *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.* (1994) 7 Cal. 4th 503, 510-514. (" 'Agents and employees of a corporation cannot conspire with their corporate principal or employer where they act in their official capacities on behalf of the corporation and not as individuals for their individual advantage.' ").

# VI

# CONCLUSION

Having withstood the barrage of paperwork filed, propounded and dumped on them over the past 23 months, by which APT and Alessio sought to drive the Defendants out of business, Defendants fully expect to prevail at trial, because all of APT's claims here are barred by the Release, and if not, five of seven of APT's claims here are barred by the CUTSA. When the two remaining claims, or even all seven claims, are actually tried, which APT has vigorously sought to avoid, by throwing every possible roadblock in the way to avoid a trial, the Defendants expect to prevail and to be awarded substantial costs and legal fees, assuming they can get a fair trial, which, given the nasty, unprofessional and underhanded tactics utilized here by APT and Alessio, may be difficult.

DATED: June 11, 2012

FUCHS & ASSOCIATES, INC.

By: /s/ John R. Fuchs
Email: jrfuchs@earthlink.net
JOHN R. FUCHS
Attorneys for Defendants
TELESKILLS. LLC, dba AMERI-SKILLS,
BURT PRICE, THOMAS CAWLEY,
XAVIER URIBE and MARA GLENN